HENRY H. ADAMS, COUNTY TREASURER OF KINGS COUNTY, PLAINTIFF, v. THE EAST RIVER SAVINGS INSTITUTION, DEFENDANT.

*Municipal corporations — construction of section 11 of article 8 of the Constitution of the State of New York, limiting the power of certain counties and cities to incur debt.*

Section 11 of article 8 of the Constitution of the State of New York, as amended in 1885, limiting the power of certain counties and cities to incur debt, provides that "No county containing a city of over one hundred thousand inhabitants, or any such city," shall be allowed to become indebted to an amount which, including existing indebtedness, shall exceed ten per cent of the assessed valuation of the real estate of such county or city subject to taxation, and that all indebtedness in excess thereof shall be void, except existing indebtedness and certificates of indebtedness issued in anticipation of taxes, and bonds issued to secure a water supply, provided a sinking fund is created for their payment.

The county of Kings, in which is the city of Brooklyn, containing over one hundred thousand inhabitants, duly offered for sale certain county bonds at a time when the debt of the county of Kings, excluding from the county real estate so much thereof as lies in the city of Brooklyn, exceeded ten per cent of the assessed valuation of such balance of the real estate in the county.

A bidder for the county bonds refused to complete his purchase upon the ground that the issue of the bonds was in violation of the State Constitution.

*Held,* that water bonds constituted a part of the debt to which the ten per cent limitation referred.

That section 11 of article 8 authorized the county, without regard to the indebtedness of the city, to issue bonds to the extent of ten per cent of the entire assessed valuation of the county, including therein the assessed valuation of the real estate in any city in the county.

That there was nothing in the section to justify the construction that the power of the county to incur debt was limited to ten per cent of the assessed valuation of such real estate as laid outside of the city limits.

That the county and the city were separate branches of the government, acting independently, and that by the Constitution neither was made dependent upon the indebtedness of the other for its power to incur a debt.

SUBMISSION of a controversy between Henry H. Adams, county treasurer of Kings county, as plaintiff, and the East River Savings Institution, as defendant, without action, upon an agreed statement of facts.

The question presented related to the validity of certain county bonds of Kings county, for the price of which the defendant had given its check to the plaintiff, and as to the defendant's obligation to pay such check.

It appeared in the statement of facts submitted, among other things, as follows:

II. The county of Kings contains the following political subdivisions, namely: The town of Flatbush, the town of New Utrecht, the town of Gravesend, the town of Flatlands and the city of Brooklyn.

III. The city of Brooklyn now is, and at and prior to the 1st day of January, 1885, was a city of over one hundred thousand inhabitants.

IV. The assessed valuation of the real estate of the county of Kings, and of its said several subdivisions, subject to taxation, as the same appeared by the assessment-rolls of said county on the last assessment for State or county taxes, prior to the incurring of the indebtedness herein referred to, being that in and for the year 1891, was as follows:

| | |
|---|---:|
| Within the town of Flatbush | $9,725,210 |
| Within the town of New Utrecht | 4,915,337 |
| Within the town of Gravesend | 3,262,825 |
| Within the town of Flatlands | 1,350,286 |
| Total without the city of Brooklyn | $19,253,658 |
| Within the city of Brooklyn | 448,802,470 |
| Total assessed valuation of the real estate of the county of Kings, including the city of Brooklyn, | $468,056,128 |

V. That the indebtedness of the county of Kings on May 4, 1892, was as follows:

| | |
|---|---:|
| Refunding loan | $2,687,500 |
| State tax registered loan | 119,000 |
| Hall of Records loan | 269,000 |
| Kings county jail loan | 45,000 |
| Department of charities and corrections (supplies) | 100,000 |
| County farm (St. Johnland) loan | 2,639,000 |
| Thirteenth regiment armory loan | 280,000 |
| Fourteenth regiment armory loan | 100,000 |
| Thirty-second regiment extension loan | 62,858 |
| Thirty-second regiment extension fitting and furnishing loan | 18,000 |
| | $6,320,358 |

In addition to the foregoing indebtedness the county
of Kings has outstanding certificates of indebted-
ness given in anticipation of the collection of taxes,
amounting, on May 4, 1892, to................     $850,000

VI. The indebtedness of the city of Brooklyn on said 4th day of
May, 1892, was as follows:
Gross debt................................... $47,629,160 93
The sinking fund of the city of
Brooklyn on the 4th day of May,
1892, consisted of:
1. City bonds or stock held in
sinking fund..............     $3,145,160 93
2. Cash in trust companies.......     418,042 42

VII. Included in the above gross debt of the city of Brooklyn
are certificates of indebtedness, given in anticipation of the collec-
tion of taxes, to the amount of $3,000,000.

VIII. Included in the gross debt of the city of Brooklyn, men-
tioned in the above paragraph VI, are bonds issued for supply of
water prior to and outstanding on the 1st day of January, 1885, and
still unpaid, to the amount of $7,660,000. Also bonds issued for
supply of water since the 1st day of January, 1885, and all payable
in less than twenty years from the dates of their issue, in amount,
$5,500,000. Such sinking funds were created for the foregoing
bonds as were required by the various statutes applicable thereto.

The questions submitted to this court in this case were as follows:

*First.* Is the issue, or proposed issue, of the bonds offered for
sale, as herein stated, in violation of the Constitution?

*Second.* Is the plaintiff entitled to collect the amount of said
check from the defendant upon tendering to it the said $90,000 of
bonds, or is the defendant entitled to the cancellation and return
of its said check?

*William C. De Witt* and *John B. Meyenborg*, for the plaintiff.

*Clarence F. Birdseye*, for the defendant.

Cullen, J. :

The question presented by this case is the interpretation to be placed upon the amendment of 1885 to section 11, article 8 of the Constitution of the State, limiting the power of certain counties and cities to incur debt. It is unnecessary to recapitulate the facts which are fully detailed in the agreed statement submitted to the court. It is sufficient to say that if the water bonds of the city of Brooklyn are to be included in estimating its debt, and if the power of the county to incur debt is limited, either by the actual debt of the city of Brooklyn, or by excluding from the real estate of the county such part thereof as lies within the city of Brooklyn, for the purpose of estimating ten per centum on its assessed value, then the bonds for which the defendant's check was given are void. But if either of these contentions fail, then the bonds are good.

The provisions of the Constitution under examination are as follows :

" No county containing a city of over one hundred thousand inhabitants, or any such city, shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appeared by the assessment-rolls of said county or city on the last assessment for State or county taxes prior to the incurring of such indebtedness ; and all indebtedness in excess of such limitation, except such as may now exist, shall be absolutely void, except as herein otherwise provided. No such county or such city whose present indebtedness exceeds ten percentum of the assessed valuation of its real estate subject to taxation, shall be allowed to become indebted in any further amount until such indebtedness shall be reduced within such limit. This section shall not be construed to prevent the issuing of certificates of indebtedness or revenue bonds issued in anticipation of the collection of taxes for amounts actually contained, or to be contained in the taxes for the year when such certificates or revenue bonds are issued and payable out of such taxes. Nor shall this section be construed to prevent the issue of bonds to provide for the supply of water, but the term of the bonds issued to provide for the supply of water shall not exceed twenty years, and a sinking fund shall be created on the issuing of

the said bonds for their redemption, by raising annually a sum which will produce an amount equal to the sum of the principal and interest of said bonds at their maturity."

The first question is, whether the water debt is to be counted in determining whether the ten per cent limit of a city has been reached or exceeded. We think it is. The constitutional provision is, that no county or city shall, for any purpose, go beyond the prescribed percentage. No language could be more forcible or broad. This is qualified by the subsequent provision that the section shall not be construed to prevent the issuance of certain bonds for water supply. Full effect can be given to both provisions. A city may, for water supply, incur debt though in excess of the limit, but it cannot contract a debt in excess of the limit for any other purpose, including in the estimate of debt any already incurred for water supply. This is not only the strictly accurate interpretation of the language, but the natural one. Had the intention been to exclude the water debt, the proviso would have been omitted and the exception placed after the words "for any purpose or in any manner." This brings us to the question of the connection between the county and city debt.

The learned counsel for the defendant contends that it was the intent of this constitutional provision to restrain the creation of debt either by the city or county, which, taken together, would exceed ten per cent of the assessed value of the real estate lying within the county or city; or, in other words, that real estate should not bear the burden of a greater debt, both for city and county purposes, than ten per cent of its assessed value. The rules for constitutional construction have often been enunciated. While the whole instrument is to be considered, and the real intent should prevail over the strict letter of the provision, still that intent must be found in the language unless the letter would lead to palpable injustice, contradiction or absurdity. (*People ex rel. Gilbert* v. *Wemple*, 125 N. Y., 485; *Newell* v. *People*, 7 id., 9.)

"If the language is unambiguous, the words plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation. Effect must be given to the intent as indicated by the language employed. Especially should this be so in the interpretation of a written Constitution, an instrument framed delib-

erately and with care, and adopted by the people as the organic law of the State." (_Settle_ v. _Van Evrea_, 49 N. Y., 280.)

This rule is peculiarly applicable to the case in hand, for the case is singularly barren of external sources from which to draw light. The limit prescribed by the Constitution is wholly arbitrary, and necessarily so. While most citizens would recognize that excessive debt by localities is an evil to be checked, the question of what debt is excessive would produce the widest diversities of opinion, diversities to be composed only by compromise at an arbitrary figure. This is the first provision of the character in any of the Constitutions of this State, so we are equally without tradition or policy in this respect. We must, therefore, decide the case on the very words of the Constitution.

The language of the Constitution is disjunctive — "no county * * * or any such city shall be allowed to become indebted * * * to an amount which * * * shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation." The literal and grammatical reading is that the county shall not be allowed to incur debt beyond a certain per cent, and that the city shall not be allowed to incur debt beyond the same per cent. Separate restrictions are imposed on each. This is so clear to my mind as to forbid elaboration. It is only when we consider that the county includes the city, and that lands in the latter are charged with the debts of both corporations, that the argument is suggested that the Constitution may have intended to prescribe a single rate or limit for the aggregate of both debts. To give force to this argument it must appear that the natural and appropriate manner to restrain local debt would be by a single rate for the joint debt of county and city. We think that the reverse of this proposition is true. While the Constitution intended to protect the property of the taxpayers from excessive local debt, it deals with this subject by placing restrictions on the agencies by which such burdens would be imposed. The State has always been divided into counties, and the county composed of towns and cities. The counties and cities (with the exception of New York) have been separate and distinct governmental agencies and corporations. Each has been in the habit of contracting debt, though the abuse of this power by counties has been of rare occurrence. But the debts have been separate and con-

tracted for different purposes — those of counties for county purposes — those of cities for city purposes. Though a sharp line of demarkation has not always been observed between the charges and expenditures of the county and those of the city, in the main the difference in character between these two classes of public burdens has been recognized. The powers of these separate branches of government are exercised by different public officers, acting not together, but each independently of the other. The effect of a single joint limit on both would be to make each subservient in its action to the other. No prudence or restraint on the part of the county authorities would enable them to prosecute a public improvement requiring the creation of debt, were the city authorities extravagant, and the same would be the case with the city. These considerations must have been palpable to the legislatures which passed this amendment, and to the people who enacted it. So far as *a priori* reasoning can go, it would seem plain that a practical legislator would have seen that the appropriate way to restrain local debt was by separate restrictions on county and city, and not by a single restriction on the combined action of both. The difficulty in the practical working of the construction contended for has been apparent to the learned counsel for the defendant, and he has not inaptly asked: "Is it to be a race for the diligent between the city and county to see which shall first exhaust the combined debt limitation?" To obviate the difficulty he presents an ingenious solution of the problem.

He claims that the limitations on county and city are separate and distinct, but that in estimating the capacity of the county to contract debt only the real estate of the county lying without the city is to be reckoned. There are several objections to this construction. It would require us to import into the Constitution words that are not there, that is, after "county" the qualification "excluding therefrom the real estate in any such city." This is not admissible. (*People* v. *Wemple*, *supra*.) Such construction would be inconsistent with the general scheme of the Constitutional provision. Whatever be the rate prescribed by the Constitution, be it several or joint, it is clear that the capacity to incur debt, whether of city or county, was to be proportioned to its resources and to the real estate on which the burden was to fall. The real estate in the

city bears the charge of the county debt to the same extent as other real estate in the county. Yet the extent of the capacity of a county to incur debt would, under this construction, depend not on the value of all its real estate, but only on a portion of it, and that, too, a portion which might be more heavily burdened with debt than the real estate excluded, for as to town and cities under one hundred thousand in population there is no debt restriction. It would also result that the largest and wealthiest counties, whose resources are not only the greatest but whose necessary expenditures are presumably the largest, would have the least power to contract debt. We, therefore, conclude that, under this constitutional provision, city and county, each may incur debt to the extent of ten per cent of the assessed value of all the taxable real estate within it, and that the bonds of the county purchased by the defendant are valid obligations.

The criticism that this construction doubles the limit or rate of debt prescribed by the Constitution is more specious than sound. It begs the very question in dispute — how that rate is to be computed or ascertained? Even if it be assumed that this subject first presented itself to the minds of legislatures and people from the standpoint of aggregate debt by all local governments, and of every local character, we have seen that, if not necessary, it would have at least been wise in drafting a restriction to apportion the limit between the city and county so that each might be responsible for its own acts. But we think it should rather be assumed that the legislature and people considered the subject from the point of view expressed in the Constitution, that is, not as to the aggregate of local debt, but as to each character of local government, what was a proper limit, considering not only its resources but also its needs. It is not to be presumed that the legislature or local authorities will seek to evade this severance of the power to incur debt by transferring to the county the burden of expenditures justly a city charge. If the attempt were made, we do not say that it would succeed.

Judgment for plaintiff on submitted case, with costs.

DYKMAN, J.:

A controversy has arisen between the parties to this action which has been submitted to the court for determination upon a

conceded state of facts, of which the following is a substantial recitation :

The county of Kings contains the following political subdivisions, namely : The town of Flatbush, the town of New Utrecht, the town of Gravesend, the town of Flatlands and the city of Brooklyn, which city contains over one hundred thousand inhabitants.

Under the authority of several statutes pertaining to the county of Kings, the plaintiff, as such county treasurer, in the month of April, 1892, offered for sale the bonds of the county amounting to $620,000.

Bids in excess of that amount were received, and the defendant in this action bid for $90,000 of such bonds, which were awarded to it, to wit, $90,000 at $91,104, which had been so bid by it therefor.

The defendant thereupon gave its check to the plaintiff for the sum of $91,104, but stopped its payment the next day and refused to complete its purchase, assigning as a reason for such refusal the invalidity of the bonds by reason of their prohibition by the Constitution of the State ; the specific objection being that they were in excess of the constitutional limitation of the indebtedness of the county.

The plaintiff retained the check of the defendant and claimed the right to collect the same upon a tender of the bonds, while the defendant desires the return of the check and relief from obligation to receive the bonds.

These adverse contentions gave rise to the two following questions which are submitted to the court for judicial answers :

*First.* Is the issue or proposed issue of the bonds offered for sale, as herein stated, in violation of the Constitution ?

*Second.* Is the plaintiff entitled to collect the amount of said check from the defendant upon tendering to it the said $90,000 of bonds, or is the defendant entitled to the cancellation and return of its said check ?

The answer to these questions is to be dictated by section 11 of article 8 of the Constitution of the State of New York, and the portion of that section which directly applies to the present controversy is this : "No county containing a city of over one

hundred thousand inhabitants, or any such city shall be allowed to become indebted for any purpose or in any manner to an amount which including existing indebtedness shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appeared by the assessment rolls of said county or city on the last assessment for State or county taxes prior to the incurring of such indebtedness, and all indebtedness in excess of ·such limitation except such as may now exist shall be absolutely void, except as herein otherwise provided."

The excepted provisions are immaterial here. The section as it now stands was adopted by the people in November, 1884, and went into operation the January following.

The language employed in the construction of the section is significant and expressive. The first word of the sentence quoted is a term of denial, expressing a negative, and applies to counties containing a city of over one hundred thousand inhabitants, while the uniting word, " or," is a disjunctive conjunction, connecting the two clauses, and expressing at the same time a separation, and has the same effect where it stands as the word " nor." It disjoins the one from the other and applies the limitation individually the same as if the sentence had been constructed as follows : Neither a county containing a city of over one hundred thousand inhabitants, nor any such city shall be allowed, etc.

It must be remembered that we are here dealing with a restriction, and not with a grant of power. The legislature has bestowed the power upon the county to contract the debt and issue the bonds in question, and they are valid if their issuance was not inhibited by the Constitution.

The powers of the general government are derivative and enumerated in the Constitution of the United States ; and when we examine that instrument we search for grants of legislative power, either express or implied, but when a State law falls under examination, we look for limitations, because the presumption is in favor of the validity of the statute. Such presumption arises from the absolute power of the legislature as the representative of the people in their sovereign capacity, except so far as it is restrained and limited by the Constitution, which is the paramount law.

In a general way of speaking, we usually say the people are sovereign and the source of all political power, and when they form a government they may invest it with all the sovereign power which they possess, and the presumption is that they do so in the absence of evidence to the contrary. But as the people do limit the State governments which they set up, and also themselves, we must, as we have said in this and similar cases, search for such limitations.

As our examination of the constitutional provision applicable to this case leads us to the conclusion that it has not been violated by the legislature under which the plaintiff has acted, our conclusion is in his favor upon the question submitted.

Judgment for plaintiff on submitted case.