(No. 10954.)

WILLIAM A. HUBBARD, Appellee, *vs.* EDWARD F. DUNNE *et al.* Appellants.

*Opinion filed February 21, 1917.*

1. CONSTITUTIONAL LAW—*construction of amendment of 1908, relating to canals, not determined by extraneous matters.* In construing the amendment of 1908 to section 3 of the constitution, relating to canals and waterways, neither political speeches, reports of commissions, messages of State officers nor previous resolutions of the General Assembly while the deep waterway project was being agitated can be regarded as determining the meaning of the term "deep waterway" or as indicating the depth intended by the said amendment.

2. SAME—*principles governing construction of statutes apply in construction of constitutions.* The general principles governing the construction of statutes apply in the construction of constitutions.

3. SAME—*the intent of a constitutional provision is to be found in the instrument itself.* In construing a constitutional provision, if the words used convey a meaning which leads to no absurdity and no contradictions, the meaning apparent upon the face of the instrument is the one which, alone, the courts are at liberty to say was intended to be conveyed.

4. SAME—*presumption is always in favor of the validity of a law.* The presumption is always in favor of the validity of a law, and unless it is in plain and obvious conflict with the constitution the court will not pronounce against its constitutionality, and in doubtful cases the doubt will be resolved in favor of the legislative power.

5. SAME—*"deep waterway amendment" to section 3 of constitution leaves the depth of canal to be determined by legislature.* The amendment of 1908 to section 3 of the constitution, relating

to canals and waterways, leaves the question of the depth of the canal and other matters relating to its construction to the determination of the legislature.

6. SAME—*the State constitution is not a grant of powers but a limitation.* The State constitution is not a grant of powers to the legislature but a limitation upon its powers, without which the legislature would be omnipotent to act.

7. SAME—*meaning of "waterway" and "canal" in deep waterway amendment to the constitution.* By the terms "waterway" and "canal," as used in the deep waterway amendment of 1908 to section 3 of the constitution, is meant a waterway for commercial purposes which will be large enough and deep enough to permit the passage of such watercraft as will ordinarily use the canal.

8. SAME—*when interpretation of the constitutional provision by the legislature is entitled to consideration.* If the language of an amendment to the constitution, framed by the legislature, is ambiguous, the construction of such language by the subsequent acts of the legislature is entitled to consideration.

DUNN, CARTWRIGHT and CARTER, JJ., dissenting.

APPEAL from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding.

P. J. LUCEY, Attorney General, and THOS. E. DEMPCY, for appellants.

T. I. McKNIGHT, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

In 1907 the Forty-fifth General Assembly of the State of Illinois, by joint resolution duly adopted by the senate and house of representatives, provided that there should be submitted to the electors of the State, at the next election for members of the General Assembly, a proposition to amend separate section 3 of the constitution of 1870, relating to canals and waterways. (Laws of 1907-08,—Adjourned Sess.—p. 102.) Said section as amended was submitted to a vote of the electors at the next general election,

held November 3, 1908, and received a majority of the votes cast and was on November 24, 1908, duly proclaimed adopted by the Governor of the State. The section as amended is as follows, the parts in italics representing the section adopted as a part of the constitution of 1870, the parts not in italics being added by said amendment in 1908:

"*The Illinois and Michigan canal,* or other canal or waterway owned by the State, *shall never be sold or leased until the specific proposition for the sale or lease thereof shall first have been submitted to a vote of the people of the State at a general election, and have been approved by a majority of all the votes polled at such election. The General Assembly shall never loan the credit of the State or make appropriations from the treasury thereof, in aid of railroads or canals: Provided, that any surplus earnings of any canal,* waterway or water power, *may be appropriated* or pledged *for its enlargement,* maintenance *or extension:* And, provided further, that the General Assembly may, by suitable legislation, provide for the construction of a deep waterway or canal from the present water power plant of the Sanitary District of Chicago, at or near Lockport, in the township of Lockport, in the county of Will, to a point in the Illinois river at or near Utica, which may be practical for a general plan and scheme of deep waterway along a route which may be deemed most advantageous for such plan of deep waterway; and for the erection, equipment and maintenance of power plants, locks, bridges, dams and appliances sufficient and suitable for the development and utilization of the water power thereof; and authorize the issue, from time to time, of bonds of this State in a total amount not to exceed twenty million dollars, which shall draw interest, payable semi-annually, at a rate not to exceed four per cent per annum, the proceeds whereof may be applied as the General Assembly may provide, in the construction of said waterway and in the erection, equipment and maintenance of said power plants, locks, bridges,

dams and appliances. All power developed from the said waterway may be leased in part or in whole, as the General Assembly may by law provide; but in the event of any lease being so executed, the rental specified therein for water power shall be subject to a re-valuation each ten years of the term created, and the income therefrom shall be paid into the treasury of the State."

Pursuant to this amendment to the constitution the Forty-ninth General Assembly in 1915 enacted an act the title and first section of which are as follows:

"An act to provide for the construction of a deep waterway or canal to be known as the Illinois waterway, from the water power plant of the Sanitary District of Chicago, at or near Lockport, in Will county, Illinois, to a point in the Illinois river at or near Utica, in LaSalle county, Illinois, to provide for the issuance of bonds to pay for said deep waterway, to provide for the development and utilization of the water power that may be generated from the water flowing through said waterway, to create a commission to be known as the Illinois Waterway Commission and to make an appropriation to carry out the provisions of this act.

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That a deep waterway or canal be constructed by the State of Illinois as soon as practicable, to be known as the Illinois waterway, from the water power plant of the Sanitary District of Chicago, at or near Lockport, in the township of Lockport, in the county of Will, to a point in the Illinois river at or near Utica, in the county of LaSalle, and that there shall be erected, equipped and maintained by the State of Illinois, power plants, locks, bridges, dams and appliances sufficient and suitable for the development and utilization of the water power of said waterway or canal, and that the cost of constructing, erecting and equipping the aforesaid public works, shall be paid out of the proceeds of bonds of the

State of Illinois to be issued and sold as hereinafter provided." (Hurd's Stat. 1916, p. 159.)

The act further provides for the appointment of a board of five commissioners, to be known as the Illinois Waterway Commission, to control the construction, management and operation of said waterway, power plants, bridges, etc., the members of said board to be appointed by the Governor, and specifies their powers and duties. The act also specifies the route of said waterway in detail between the termini as stated in the title and makes provision for the locks, etc., at different points. The act contains many provisions which are not here involved and which it is not necessary to notice, except section 6, which provides in different paragraphs, in substance, that said waterway or canal shall have a minimum depth of eight feet, and section 12, which provides an appropriation for different features of the work, aggregating $5,000,000, and the raising of said sum by the issue of bonds of the State to an amount not exceeding $5,000,000, as authorized by the amendment to the constitution, ratified at the election of November 3, 1908.

Appellee filed his bill in chancery to the March term, 1916, of the Sangamon county circuit court. The defendants filed their joint and several demurrers to the bill. By leave of court an amended bill of complaint was filed. The defendants filed their joint and several demurrers to the amended bill of complaint, which were sustained. The complainant by leave of court then filed a second amended bill of complaint, which set up that complainant is a resident of Greene county, Illinois, and a tax-payer, and alleged the passage of the act of May 27, 1915, the title of which has been heretofore set out; that the said act provides for the construction of a waterway and for the issuance of bonds to the amount of $5,000,000, and for the appointment of a board of commissioners to carry out the provisions of the act and the payment of salaries of said commissioners; that the act purports to authorize the con-

struction of a canal or waterway having a minimum depth of eight feet; that the words "minimum depth of eight feet," as used in the alleged act, mean that said proposed waterway would have a depth of only eight feet in certain portions thereof; that the said commissioners contemplate, and will under and by virtue of said act construct, a waterway which is eight feet deep only throughout the greater portion of the course thereof, and that the proposed waterway or canal is not a deep waterway within the meaning of the amendment to the constitution. It sets up different reports and recommendations by Federal and State officers from 1808 to 1907; the acts of Congress of 1822 and 1827, by which the right of way for a canal and grants of land to aid in the construction of said canal to connect Lake Michigan with the Illinois river were made to the State of Illinois; the construction of the Illinois and Michigan canal between the years 1836 and 1848; avers that the proposition for a deep waterway or canal along the route of the Illinois and Michigan canal was agitated for a great many years and culminated in a general demand throughout the State of Illinois for a deep waterway, the term "deep waterway" being understood by the people to mean a waterway which ocean-going vessels could navigate, the construction of dams and locks on the Illinois river by the Federal government and the State of Illinois to insure navigation to the Mississippi river, and the passage by the General Assembly, in 1889, of an act creating the Chicago Sanitary District, authorizing the building of a channel by said district of not less than fourteen feet in depth and capable of carrying not less than 600,000 cubic feet of water per minute; that by that act the Sanitary District of Chicago was created, and it was thereby determined that the deep waterway to be constructed from Lake Michigan to the Illinois river and down the Illinois river should be at least fourteen feet in depth; that after the passage of that act the General Assembly by joint resolution requested the United States gov-

ernment to stop work upon the locks and dams at LaGrange and Kampsville, in the Illinois river, and supply the available funds and make future appropriations for the improvement of a channel from LaSalle to the mouth of the Illinois river, such improvement to be the creation of a channel not less than one hundred and sixty feet wide and twenty-two feet deep, and to project a channel of similar capacity and not less than fourteen feet deep from Lake Joliet, in the Illinois river, to LaSalle; that said joint resolution declared it to be the policy of the State of Illinois to procure the construction of a waterway of the greatest practical depth and usefulness for navigation from Lake Michigan, by way of the Desplaines and Illinois rivers, to the Mississippi river; that on April 28, 1882, the Illinois and Michigan canal was by the General Assembly ceded to the United States for the purpose of making an enlarged canal or waterway from Lake Michigan to the Illinois and Mississippi rivers, upon condition that the canal should be enlarged and maintained as a national waterway for commercial purposes, the act to take effect only upon the vote of the people of the State, but that no vote was ever taken upon said act. It was represented as a conclusion of the pleader that from all the above and foregoing the policy of the State of Illinois was to establish a waterway, whenever such should be contemplated, of a depth in canal and rivers from Lake Michigan to the Mississippi river of not less than fourteen feet. The bill sets out the provision of separate section 3 of the constitution that "the General Assembly shall never loan the credit of the State or make appropriations from the treasury thereof, in aid of railroads and canals," and recites that by joint resolution of the General Assembly in 1907 the constitutional amendment hereinbefore set out was passed, providing for the construction of a deep waterway or canal from the present water power plant of the Sanitary District of Chicago near Lockport to a point on the Illinois river at or near Utica. The bill also

refers to a report of the Mississippi River Commission, so called, appointed by act of Congress to investigate and report on a navigable waterway from the Great Lakes to the Mississippi river; that a waterway fourteen feet in depth from Lockport to the mouth of the Illinois river, and thence by way of the Mississippi river to St. Louis, was practicable and could be constructed, and alleges that a campaign was conducted in Illinois for the adoption of the constitutional amendment upon the theory that a waterway should be constructed at least fourteen feet in depth, with locks at least six hundred feet long and eighty feet wide and with a depth of fourteen feet over the mitre sills, and that the voters at the election of 1908 so understood said amendment; that the amendment was ratified by a large majority of the people and was proclaimed by the Governor of the State as having been duly adopted November 24, 1908; that after the adoption of said amendment the Rivers and Lakes Commission of Illinois, in its annual report dated December 31, 1912, declared the waterway policy of Illinois to be, under the amendment in question, that the dams in the Illinois river be removed and the channel be dredged to a depth of at least fourteen feet; that on April 10, 1907, the Governor of the State sent to the General Assembly a message reviewing the waterway situation and recommending legislation along the lines of the constitutional amendment of 1908 and that the waterway so constructed under the said amendment should have a depth of twenty-four feet; that said act of May 27, 1915, is claimed by defendants to be a legal act, duly and properly passed by the senate and the house of the General Assembly of the State of Illinois under the authority of the constitutional amendment of 1908, and that the defendants, Edward F. Dunne, as Governor, and the other State officers whose duties appertain thereto, claim said act to be valid and intend immediately to have bonds to the amount of $5,000,000 engraved and printed and sold in accordance with the provisions of the act, to the

injury and detriment of complainant and other tax-payers of the State; that under said act a channel may be constructed eight feet in depth, with locks two hundred and fifty feet long and forty-five feet wide, and if the same is so constructed it will be in violation of the constitutional amendment before referred to, and the said proposed canal provided for in said act will not be a deep waterway within the meaning and terms of the said act, and the act is therefore unconstitutional and void.

The prayer of the bill is for an injunction restraining the defendants, as State officers, from incurring any indebtedness for the engraving, printing or issuance of bonds, for interest on such bonds or for salaries or other expenses of said commissioners; that upon final hearing the injunction be made perpetual and the alleged act of May 27, 1915, be declared unconstitutional and void; that the defendants be perpetually enjoined from issuing or selling bonds and constructing said waterway, or doing any other act or thing under or pursuant to said alleged act for the purpose of putting the same into effect or carrying out any of the provisions thereof.

Defendants filed their joint and several demurrers to the second amended bill of complaint, which were overruled, and the defendants electing to stand by their said demurrers and declining to answer further, the court entered a decree allowing the injunction as prayed by complainant. Defendants prayed and were allowed an appeal to this court.

In the original and first amended bills other points than as above set out were urged against the validity and constitutionality of the act in question, but these were omitted from the second amended bill of complaint and were abandoned on the hearing and have not been argued in this court. The sole question presented by the bill, demurrers and assignments of error, as conceded by counsel for appellee, is whether the act of May 27, 1915, providing for a waterway or canal of a minimum depth of eight feet, is

constitutional in view of the constitutional amendment adopted at the election of November 3, 1908, pursuant to which said act was passed, or, in brief, whether an eight-foot canal, as provided in the act, is a deep waterway within the meaning of the constitutional amendment.

Counsel for appellee contends in his argument that any law providing for a canal or waterway pursuant to the constitutional amendment aforesaid should have specified that the same be not less than fourteen feet in depth. By the bill it appears that the project of an artificial waterway or canal to connect Lake Michigan with the Illinois river, and thus form a connecting link for continuous passage by watercraft from the Great Lakes to the Gulf of Mexico by means of the Illinois and Mississippi rivers, is not a new one, and it is doubtless true that the subject has been agitated at intervals from the time of the early French explorers to the present date, all of which is interesting as a matter of history and engineering. However, we cannot concede that political speeches, reports of commissions or messages of State officers or previous resolutions of the General Assembly can be accepted as determining the policy of the people of the State in adopting the constitutional amendment in question, or irrevocably committing the authorities to the construction of a waterway of any particular depth in the future, or as throwing any light on the definition of the term "deep waterway" as used in the constitutional amendment, or as conclusive that a waterway or canal having a minimum depth of eight feet would not be a deep waterway within the meaning of the constitutional amendment or would be in violation of the constitutional amendment referred to. It may be conceded, and it is undoubtedly true, that there have been advocates of a waterway of a minimum depth of eight feet, advocates of a waterway of a depth of fourteen feet and advocates of a waterway of a much greater depth, and also that there have been those who were opposed to any waterway at all. In

*People* v. *Hutchinson,* 172 Ill. 486, we held that the general principles governing the construction of statutes apply in the construction of constitutions. In *People* v. *Chicago Railways Co.* 270 Ill. 87, we said on page 105 of the opinion: "It is a primary rule in the interpretation and construction of a statute that the intention of the legislature is to be ascertained and given effect. (*People* v. *Price,* 257 Ill. 587.) This rule does not, however, permit the courts to consider statements made by the author of a bill or by those interested in its passage, or by members of the legislature adopting the bill, showing the meaning or effect of the language used in the bill as understood by the person or persons making such statements. Thus, in *Belleville and Illinoistown Railroad Co.* v. *Gregory,* 15 Ill. 20, it was said: 'Nor can the presumed or even well known views of all the members of the legislature be allowed to repeal an express provision of a law or to control its construction. The law, alone, can speak the legislative will. When the courts shall be driven to the lobbies of the legislature to learn the sentiments of the members for the purpose of construing the laws a new rule of construction will have been adopted.' "

The resolution providing for the constitutional amendment in question was duly passed and the amendment to the constitution was submitted to the people of the State and was adopted. By this constitutional amendment the restriction that the General Assembly should never loan the credit of the State or make appropriations from the treasury thereof in aid of canals, as far as a canal between Lockport and Utica was concerned, to cost not to exceed $20,-000,000, was removed. This left the General Assembly free, in its discretion, to provide or not to provide for the construction of a deep waterway or canal between the two places mentioned, to provide a bond issue to aid in its construction, not to exceed $20,000,000, and to enable it, from the surplus earnings of said waterway or canal or water power developed thereby, to provide for its maintenance,

enlargement and extension in the future. The court below apparently took the position that the phrase "deep waterway or canal," or the word "deep," is ambiguous, and that it could not be determined from said terms how deep the canal section, as amended, required said waterway or canal to be, and resort must therefore be had to extraneous aid to interpret said language and the constitutional provision as amended. To do so the court resorted to the history of the times and certain acts, resolutions, memorials, messages, reports of commissions, engineers, etc., and took judicial cognizance and notice of what it assumed to be a settled fact: that the people, in voting upon the adoption of the amendment, did so with the understanding that the waterway or canal authorized by said amendment should have a minimum depth of fourteen feet, and that at the time the amendment was voted upon the term "deep waterway or canal" had a well settled and definite legislative meaning, and the court read into the constitutional amendment the words "minimum depth of fourteen feet," and held that since the act of May 27, 1915, provided for a waterway or canal with a minimum depth of eight feet instead of a minimum depth of fourteen feet the act was unconstitutional and void.

The word "deep," as used in the constitutional amendment, is used in its usual and ordinary sense. One of the cardinal rules to be followed in ascertaining the meaning of a constitution, as laid down in Cooley's Constitutional Limitations, (7th ed. p. 91,) is as follows: "To ascertain the meaning of the constitution the first resort in all cases is to the natural signification of the words used, in the order and grammatical arrangement in which the framers have placed them, and if, thus regarded, the words used convey a meaning which leads to no absurdity and no contradiction between parts of the same instrument, then the meaning apparent upon the face of the instrument is the one which, alone, the courts are at liberty to say was intended to be

276 — 39

conveyed." The intent of the constitutional provision is to be found in the instrument itself. (*Way* v. *Way,* 64 Ill. 406.) "It is not for the courts to amend or change the law under the guise of construction." (36 Cyc. 1103.) The presumption is always in favor of the validity of the law, and unless it is in plain and obvious conflict with the constitution this court will not pronounce against its constitutionality, and in doubtful cases the doubt will be resolved in favor of the legislative power. *Bunn* v. *People,* 45 Ill. 397; *People* v. *Joyce,* 246 id. 124; *Condon* v. *City of Chicago,* 249 id. 596.

In view of the principles laid down in the foregoing authorities, and many others that might be cited, there is no occasion or justification for resorting to extraneous aids in the interpretation of the amended canal section of the constitution. The word "deep," as used in the constitutional amendment, is an adjective and modifies the words "waterway or canal." It does not indicate how deep the waterway or canal is to be, measured in feet or inches. It is a relative term, and by its use without specifying any exact measurement the framers of the amendment, and the people who by their votes adopted it, knew they were not specifying any arbitrary depth. There certainly can be no reason for reading into the constitutional amendment any direction to the legislature to provide for a canal of minimum depth of fourteen feet or any other number of feet, and the unavoidable inference is, even if the constitutional amendment be taken as an express grant of power to the legislature, that the intention was to refer the matter of the precise depth of the canal, if one should be provided for, as well as many other matters relating to its construction, to the determination of that body. In determining whether the legislature has exceeded its constitutional powers in the enactment of laws it is a well settled rule of construction that the constitution is not a grant of powers to the legislature but a limitation upon its powers; (*People* v. *McCullough,* 254

Ill. 9;) that but for the constitutional limitation the legislature would be omnipotent to act, and that the express grant of power to do a certain thing without words of limitation or restriction, carries with it all necessary and proper means to make the same effectual.

The amendment in question, if treated as a specific grant of power or direction to the legislature, is not self-executing but leaves much to be done by the General Assembly. That body may or may not by suitable legislation provide for a deep waterway or canal between the termini mentioned which may be practicable for a general plan and scheme of a deep waterway along a route deemed most advantageous for such plan of deep waterway, and the General Assembly may provide for the erection, equipment and maintenance of power plants, locks, bridges, dams and appliances sufficient and suitable for the development and utilization of water power, and authorize the issue, from time to time, of bonds of the State in a total amount not to exceed $20,000,-000. The amendment further provides that all power developed from said waterway may be leased in part or in whole, as the General Assembly may by law provide, but in the event of any lease being so executed, the rental provided therein for water power shall be subject to re-valuation each ten years of the term created and the income therefrom shall be paid into the treasury of the State. It is perfectly apparent from a consideration of the amendment that the entire matter, within certain restrictions, is to be left to the legislative judgment and discretion. There are no specifications in the amendment as to power plants, locks, bridges, dams or appliances. They are to be suitable and sufficient for the development and utilization of the water power which may be created. All these matters are left to the discretion of the General Assembly, to be the subject of future legislative enactments or not, as in its judgment it saw fit. It is beyond argument that a court would not be justified in overruling the judgment of the General Assembly on any

of those matters which are left to its discretion. We would not be justified in holding the law in question unconstitutional unless it is clearly contrary to the constitution as amended. By the terms "waterway" and "canal," as used in the constitutional amendment, is meant a waterway for commercial purposes which will be large enough and deep enough to permit the passage of such watercraft as would ordinarily use such canal. We do not mean to say that if the law in question fixed such a depth for the proposed canal that it would, when completed, be useless or inadequate for those purposes such a law would be valid, as that, in effect, would provide something which would not be a canal or waterway at all and would not be such a waterway as was contemplated by the amendment to the constitution. There is, however, no claim of this kind made in the bill as finally amended. The original bill did contain an averment that "a canal or waterway which is only eight feet deep would be far too shallow to accommodate the ordinary modern vessels which now are, heretofore have been or may hereafter be in service upon the lakes, rivers and inland canals in the United States, and that by reason thereof said proposed waterway or canal is not a deep waterway within the meaning of the Illinois State constitution," but there is no such allegation in the second amended bill of complaint, and we must assume that such charge was advisedly omitted from the bill as finally amended, and if the allegation were made that a canal eight feet deep would be inadequate for the passage of such craft as would ordinarily use the canal such allegation could not be sustained by proof. The only possible restriction imposed by the constitutional amendment as to depth would be that the canal be deep enough to meet the ordinary and reasonable demands of water traffic, and if it is deep enough for that then it is a "deep waterway" within the meaning of the constitutional amendment.

One of the provisions of the amendment is that the waterway or canal is to be practical. There are some mat-

ters pertaining to the geography of this State of which we can and do take judicial notice, among other things the location and course of the Illinois and Desplaines rivers and of the Illinois and Michigan canal between the termini mentioned in the constitutional amendment. The waterway is to be a deep waterway or canal, and suitable legislation is to be adopted for the construction of such waterway so it shall be practical. What would be a practical canal when built would depend upon a great variety of physical conditions and other matters which it was undoubtedly deemed advisable to refer to the General Assembly. It is clearly. apparent to anyone, and must have been to the members of the General Assembly in enacting the law in question, that it would be entirely useless and impracticable to provide for a waterway or canal of any greater depth than the minimum depth of the Illinois river between the lower terminus of the canal and its mouth. Boats passing to and from the lower terminus of this canal must traverse the Illinois river, which empties into the Mississippi river, both of which are navigable streams and under control of the Federal government. The bill does not allege that the depth of the Illinois river from Utica to its mouth exceeds eight feet throughout its course, and without a channel of such depth in the Illinois river the utter impracticability of a canal such as that proposed, of a greater depth than eight feet, is apparent. It is, of course, a fact that the greater the depth and size the greater will be the cost of the proposed waterway. The bill does not allege or show that a fourteen-foot canal could be constructed, or a canal of any greater depth than eight feet, within the cost limit fixed by the constitutional amendment, and for that reason is defective. If in the future the Federal government, or some other agency by leave of the Federal authorities, should deepen the Illinois river, (assuming that its minimum depth does not exceed eight feet,) and the times and circumstances would be such that the canal now projected should be deepened, then the legisla-

ture may, in its discretion, unquestionably provide for such work and also authorize the expenditure necessary, within the limit prescribed by the constitutional amendment. The power of the legislature is not exhausted by the passage of the act in question as to enlarging the canal or as to the credit that may be used. The canal may be deepened and widened in the future if commercial necessities justify the additional expense that such deepening and enlargement entail and other conditions warrant. Paragraph "Q" of section 6 of the act in question is as follows: "The said Illinois waterway shall be constructed so as to afford for navigation a channel of a depth of approximately, but not less than eight feet throughout its course at all times. Additional depth of the channel as commerce may require, may be hereafter provided for through appropriate legislation, by and with the co-operation of the State and the Federal government, when a sufficient depth of channel in the lower Illinois river and the Mississippi river shall have been attained or provided for by the Federal government to warrant the deepening of the channel of the aforesaid Illinois waterway; it being deemed and hereby declared that the said Illinois waterway is practical for a general plan and scheme of deep waterway along the route hereinbefore mentioned, and is deemed most advantageous for such plan of deep waterway."

It seems clear from the language of the act above quoted that the General Assembly considered that the canal provided for in the act, as a general plan and scheme of waterway, was practical under the conditions existing at the time of the passage of the act, and also had in contemplation that the canal proposed was fully as deep as conditions justified, and that it could be deepened and enlarged if in the future such deepening and enlargement would be practicable or justify the expense in view of conditions that might then obtain, such as the deepening of the Illinois and Mississippi rivers, assuming that should also be done. Even if we as-

sume, for the sake of argument, that the language of the amendment of 1908 is ambiguous, the construction of said amendment and the interpretation of the language thereof by the General Assembly, as shown by the terms of the act of 1915, are entitled to consideration. It was the legislative department that framed the language of the amendment and adopted the resolution providing for submitting it to a vote of the people. The amendment so framed and submitted was adopted by the vote of the people. The act in question was passed by the same department of the government that framed the amendment, and the language of the amendment was interpreted by that department in the passage of the act in question. The construction and interpretation of the legislature are entitled to weight. (*People* v. *Fidelity and Casualty Co.* 153 Ill. 25.) Under the rules of construction adopted by the courts we are unable to say that the act in question is unconstitutional.

The judgment of the circuit court of Sangamon county will be reversed and the cause remanded to that court, with directions to dismiss the bill of complaint for want of equity.

*Reversed and remanded, with directions.*

DUNN, CARTWRIGHT and CARTER, JJ., dissenting:

The purpose of the amendment of the constitution adopted in 1908 was to authorize the construction from Lockport to Utica of a deep waterway for purposes of commerce and navigation. The waterway must, of course, be a navigable body of water and it must be of sufficient depth to accommodate deep water navigation. A channel of the character of the Illinois and Michigan canal was clearly not intended, for that canal had proved to be a financial burden to the State, and the legislature many years before 1908 had proposed to cede it to the United States upon condition that the Federal government should enlarge it and maintain it as a national waterway for commercial purposes. The people in adopting this amendment, and the legislature in

submitting it for adoption, did not have in mind only the light-draft boats of the upper Illinois river. The word "deep" in connection with "waterway," in the amendment, did not refer to a shallow channel capable of carrying vessels of light draft, only. It could have been understood only as meaning a channel of sufficient depth to carry vessels from the deep water at Lockport to the Illinois river at Utica. The bill contains the allegation that the proposed waterway is not a deep waterway within the meaning of the amendment to the constitution, and thus presents a question of fact whether the channel provided for is a deep waterway or not. This is not a mere conclusion of the pleader which is not admitted by the demurrer but is the allegation of a fact. The term "deep waterway" is not a clearly defined term, as the term "twenty-foot channel" would be. The former term is relative. All might agree that a channel four or five feet deep would not be a deep waterway or that a channel twenty-four or twenty-five feet deep would be. When, however, it is proposed to construct a channel of intermediate depth a question arises as to whether the proposed channel is a deep waterway or not, and this can not be answered as a question of law. It is a question of fact as to whether the channel proposed to be constructed is in accordance with that authorized by the constitution. While the legislature may exercise its discretion as to the character of the waterway to be constructed and while every presumption is to be indulged in favor of the validity of its action, yet its discretion is not absolute. It is limited by the constitution to the construction of a deep waterway. In our judgment the bill was sufficient to require an answer from the defendant, and the demurrer to it was properly overruled.