DEARBORN TOWNSHIP SCHOOL DISTRICT NO. 7 *v.* CAHOW.

1. ELECTIONS—QUALIFICATIONS OF ELECTORS—CONSTITUTIONAL LAW—
    STATUTES.
    Qualifications of electors which have been specifically provided
    by the Constitution may neither be increased nor decreased by
    legislation (Const. 1908, art. 3, §§ 1, 4, as amended, and art.
    10, § 21, as added in 1932; 2 Comp. Laws 1929, § 7410).

2. SCHOOLS AND SCHOOL DISTRICTS—QUALIFICATIONS OF ELECTORS—
    BOND ISSUES—CONSTITUTIONAL LAW.
    While in voting on ordinary school matters provisions of school
    code relative to qualifications of electors would control, when
    the question is one of issuing bonds which property owners
    of the district must pay by taxation, qualifications of electors
    as prescribed by Constitution for voting on bond issues would
    control, hence exclusion in such election of spouses of electors
    who were owners of assessed property in the district resulted
    in a violation of the Constitution (Const. 1908, art. 3, §§ 1, 4,
    as amended in 1932; 2 Comp. Laws 1929, § 7410).

3. MANDAMUS—SCHOOL BONDS—QUALIFICATIONS OF ELECTORS.
    Issuance of bonds on school district will not be compelled by
    mandamus where electors eligible to vote under constitutional
    provisions but ineligible under statute were prevented from
    voting on question of issuance of bonds, the writ being denied
    without costs, since a public question is involved (Const. 1908,
    art. 3, §§ 1, 4, as amended in 1932; 2 Comp. Laws 1929,
    § 7410).

McALLISTER, J., dissenting.

Petition by Board of Education of School District
No. 7 of the Township of Dearborn, Wayne County,
Michigan, for a writ of mandamus to compel Paul D.
Cahow to execute bonds. Superintendent of Public
Instruction Eugene B. Elliott intervened. Sub-
mitted June 22, 1939. (Calendar No. 40,688.)    Writ
denied July 6, 1939.

*Berry & Stevens* (*Claude H. Stevens,* of counsel), for plaintiff.

*O. L. Smith,* for defendant.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd,* Solicitor General, for intervener Superintendent of Public Instruction.

NORTH, J.   School District No. 7, Dearborn township, Wayne county, submitted to the school district electors two propositions: (1) that of increasing the tax limitation from 1.5 per cent. to 1.802 per cent. of assessed valuations, and (2) that of bonding the school district in the amount of $182,600 for four school additions.   Both upon registration prior to the election and at the election held November 9, 1938, the qualifications of electors were tested by the portion of the school code found in 2 Comp. Laws 1929, § 7410 (Stat. Ann. § 15.428).   On the question of increasing the tax limitation all registered school electors were permitted to vote; but on the question of the bond issue only those electors who owned property assessed for school taxes, as provided in the above-cited statute, were permitted to vote.   Both propositions carried.   Controversy has arisen relative to the validity of the vote on the bond issue; and the president of the board of education refused to execute the bonds on the ground that persons legally qualified to vote on this issue were wrongfully deprived of so doing.   The matter is before us on petition seeking mandamus directing the execution of the bonds.

The fundamental and controlling proposition in the instant case is this: If the Constitution specifically provides the qualifications of electors for the purposes under consideration, such qualifications can neither be increased nor decreased by legislation.

Const. 1908, art. 10, § 21, as added in 1932, specifically provides that the rate of taxation can be increased beyond the 15-mill constitutional limitation only "by a two-thirds vote of the *electors* of any assessing district." Const. 1908, art. 3, § 1, as amended in 1932, defines who are electors. For the purposes of this case an elector under the Constitution may be said to be a citizen above the age of 21 years who has resided in the State six months and in the city or township in which such person proposes to vote at least 20 days next preceding such election. This, limited to the assessment district, is the test to be applied in voting upon a proposal to increase the 15-mill limitation, which is only a matter of fixing a rule of maximum taxation.

But in voting upon a proposed bond issue the Constitution contains a further provision in which additional qualifications of an elector are specified. Const. 1908, art. 3, § 4, as amended in 1932, reads:

"Whenever any question is submitted to a vote of the electors which involves the direct expenditure of public money *or the issue of bonds,* only such persons having the qualifications of electors who have property assessed for taxes in any part of the district or territory to be affected by the result of such election or the lawful husbands or wives of such persons shall be entitled to vote thereon."

While it is true that in voting on ordinary school matters the statutory provisions in the school code, particularly part 2, chap. 4, § 1, entitled "School Elections" (2 Comp. Laws 1929, § 7410 [Stat. Ann. § 15.428]) control; nonetheless when the question is one of issuing bonds which property owners of the district must pay by taxation, it falls squarely within Const. 1908, art. 3, § 4, as amended, and the qualifications as to electors therein contained control. They cannot be changed by statute.

In applying the statutory qualifications as the test of eligibility to vote on issuing $182,600 of school district bonds, the spouses of husbands or wives who were electors and owners of assessed property in the district were excluded. This was in violation of the constitutional provision. Defendant was right in refusing to certify the bonds. Issuance of mandamus is denied. No costs will be awarded.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred with NORTH, J.

POTTER, J. (*concurring in part*). Mandamus by plaintiff against defendant to require the certification and issuance of school bonds by district No. 7 of the township of Dearborn, Wayne county.

Two questions are presented:

(1) Plaintiff contends only those electors qualified under 2 Comp. Laws 1929, § 7410 (Stat. Ann. § 15.428), could vote upon the question of increasing the tax limitation imposed by Const. 1908, art. 10, § 21, as added in 1932; while defendant contends all persons qualified as electors under Const. 1908, art. 3, § 1, as amended in 1932, should have been permitted to vote upon this question;

(2) Plaintiff contends only those electors qualified under 2 Comp. Laws 1929, § 7410, should have been permitted to vote upon the issuance of bonds; while defendant contends all persons qualified as electors under article 3, § 1, Const. 1908, should have been permitted to vote on the question of issuing such bonds.

The most important question to be determined is the meaning of Const. 1908, art. 10, § 21, as added in 1932, which prescribes a limit upon the power of taxation, and, at the same time, provides for the establishment of an exception to or exemption from the

general tax limitation prescribed upon a vote of the qualified electors in "any assessing district."

This court is concerned with the constitutional limitation of power otherwise practically unlimited, and the creation of an exemption from such constitutional limitation.

The construction of Constitutions—compacts between the people providing for the organization of government and the distribution and regulation of its powers—may, in case there is ambiguity therein, become a matter for judicial determination. But, when the language of a Constitution is of itself free from ambiguity, there is no room for judicial construction and interpretation. This is the rule recognized and applied in the interpretation of statutes in this State. *MacQueen* v. *City Commission of City of Port Huron,* 194 Mich. 328; *Crary* v. *Marquette Circuit Judge,* 197 Mich. 452; *In re Merrill,* 200 Mich. 244; *Farm Products Co.* v. *Jordan,* 229 Mich. 235; *Luyk* v. *Hertel,* 242 Mich. 445, which quoted with approval language from 25 R. C. L. p. 958; *City of Detroit* v. *Township of Redford,* 253 Mich. 453.

There is involved the proper construction of the fundamental law enacted by the people—an amendment to the Constitution of the State.

Written Constitutions adopted by the people, if free from patent or latent ambiguity, are to be construed and enforced in substantially the same way as are statutory enactments, except that constitutional provisions are generally to be construed more liberally in favor of the individual citizen.

"The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the

courts in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.'' *Lake County* v. *Rollins,* 130 U. S. 662, 670 (9 Sup. Ct. 651).

See, also, 11 Am. Jur. p. 679.

''When the language of the Constitution is positive and free from all ambiguity, courts are not at liberty, by a resort to the refinements of legal learning, to restrict its obvious meaning.'' *Cooke* v. *Iverson,* 108 Minn. 388, 397 (122 N. W. 251, 52 L. R. A. [N. S.] 415) ; *State, ex rel. Simpson,* v. *City of Mankato,* 117 Minn. 458, 463 (136 N. W. 264, 41 L. R. A. [N. S.] 111).

It is well settled that cities, villages and other municipalities may be constitutionally authorized to establish and maintain different limits upon the power of local municipal taxation.

The Constitution must be construed from the language thereof, from the four corners of the instrument. Recourse may not be had to extrinsic facts and circumstances to vary its language. Nor may it mean one thing today and another thing tomorrow, depending upon legislative action. The constitutional definition of ''electors'' governs in all cases when the adoption, amendment, or the creation of increase in limitation of taxation is involved. These constitutional electors adopted the Constitution. They adopted the amendment placing a limit upon the power of taxation. Having adopted the general constitutional rule limiting the exercise of the taxing power, the question is whether such limitation on the taxing power may be increased in a particular assessing district by a limited statutory class of electors, or whether the term ''electors'' used in the constitutional amendment imposing the tax limitation refers to electors of the same class as those who adopted the constitutional amendment.

In dealing with constitutional amendments, constitutional electors were undoubtedly referred to. In dealing with exceptions to be created at the local option of the electors of a particular assessing district, electors of the same kind and character and possessing the same qualifications in the particular district as were possessed by the electors who imposed the general limitation were intended. It was not the object and intention of the constitutionally qualified electors of the State who imposed this limitation upon the taxing power to provide for the creation of exceptions to the general constitutional rule by a limited class of electors possessing other and different qualifications from those who adopted the general rule. The constitutional limitation upon the taxing power having been adopted by electors as defined in the Constitution, exceptions to the operation of such constitutional limitation within a particular assessing district can be created only by the electors as defined in the Constitution in that taxing district.

It has heretofore been the general rule that the Constitution means now just what it meant when it was adopted. The language of a constitutional provision should mean the same thing today as it means at a later time, in the same assessing district. Who are electors may not depend upon a change in legislation modifying the statutory qualification for electors as prescribed in Const. 1908, art. 3, § 1, as amended in 1932, who have been permitted to vote upon the tax limitation proposition. This is the intent of the constitutional provision here involved. Evidence of matters *dehors* the instrument, extrinsic evidence, may not be considered in construing the language of a constitutional provision. The intent and meaning of the instrument must be gained from the language embodied therein. *People, ex rel. Carlson,* v. *City Council of Denver,* 60 Col. 370 (153 Pac.

690) ; *Hubbard* v. *Dunne,* 276 Ill. 598 (115 N. E. 210) ; *Green* v. *Weller,* 32 Miss. 650; *Northern Pacific R. Co.* v. *Mjelde,* 48 Mont. 287 (137 Pac. 386) ; *State* v. *DeLorenzo,* 81 N. J. Law, 613 (79 Atl. 839) ; *Adams* v. *East River Sav. Inst.,* 20 N. Y. Supp. 12; *Crawford* v. *Weidenmeyer,* 93 Ohio St. 461 (113 N. E. 267) ; *State, ex rel. Clark,* v. *Harris,* 74 Ore. 573 (144 Pac. 109, Ann. Cas. 1916 A, 1156) ; *McDowell* v. *Burnett,* 92 S. C. 469 (75 S. E. 873) ; *Prescott* v. *Duncan,* 126 Tenn. 106 (148 S. W. 229) ; 12 C. J. p. 703.

"In other words, in construing a constitutional provision, for the purpose of ascertaining the intent of the people in adopting it, when its language is explicit, the courts are bound to seek for the intention in the words of the provision itself, and they are not to suppose or hold that the people intended anything different from what the meaning of the language employed imports." *People, ex rel. Carlson,* v. *City Council of Denver, supra,* 377.

"In the construction of constitutional provisions and statutes, the question is not what was the intention of the framers, but what is the meaning of the words they have used. A Constitution does not derive its force from the convention which framed it, but from the people who ratified it, and the intent to be arrived at is that of the people, and this is found only in the words of the text." *City of Beardstown* v. *City of Virginia* (syllabus), 76 Ill. 34.

"The existence of a constitutional limitation upon the legislative power is to be established and defined by words that are found written in that instrument, and not by reference to some spirit that is supposed to pervade it or to underlie it or to overshadow the purposes and provisions expressed in its written language." *State* v. *DeLorenzo, supra,* 621.

If courts venture to substitute for the clear language of the instrument their own notions of what it should have been, or was intended to be, there will be

an end of written Constitutions. *Greencastle Township* v. *Black,* 5 Ind. 557; *Newell* v. *People, ex rel. Phelps,* 7 N. Y. 9; *Purdy* v. *People,* 4 Hill (N. Y.), 384.

2 Comp. Laws 1929, § 7410, provides:

"On the question of voting school taxes, every citizen of the United States of the age of twenty-one years, male or female, who owns property which is assessed for school taxes in the district, and who has resided in the district as above stated, shall be a qualified voter: *Provided,* That the purchaser of land upon a land contract, who actually pays the taxes upon such land and resides thereon, may vote upon all questions; and where a husband and wife own property jointly and the same is assessed for school taxes in the school district, each may, if otherwise qualified, vote upon all questions including the question of raising money."

This provision of the statute restricts the constitutional qualifications of electors as prescribed in Const. 1908, art. 3, § 1, as amended in 1932, so far as voting school taxes is concerned in school districts. Such statutory provision, though anomalous, has been held valid. *Belles* v. *Burr,* 76 Mich. 1; *Menton* v. *Cook,* 147 Mich. 540.

We hold, therefore, (1) that all electors in the school district in question who could have qualified under Const. 1908, art. 3, § 1, as amended in 1932, should have been permitted to vote upon the question of increasing the tax limitation in such district; and (2) that only those electors who could qualify under the provision of 2 Comp. Laws 1929, § 7410, above quoted, were qualified to vote upon the issuance of bonds by the school district and the imposition of taxes to provide for the payment thereof.

A writ of mandamus will be denied, but without costs, a public question being involved.

McAllister, J. (*dissenting*). On November 9, 1938, there were submitted to the electors of school district number 7 of the township of Dearborn, Wayne county, Michigan—a graded school district—two propositions; one, to bond the district for $182,600 for four school additions; the other, to increase the constitutional tax limitation from 1.5 per cent. to 1.802 per cent. of the assessed valuation of the school district for the period from 1939 to 1943, inclusive. The proposition to increase the tax limitation was submitted to the voters by virtue of Const. 1908, art. 10, § 21, as added in 1932, which provides:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent. of the assessed valuation of said property, except taxes levied for the payment of interest and principal on obligations heretofore incurred, which sums shall be separately assessed in all cases: *Provided,* That this limitation may be increased for a period of not to exceed five years at any one time, to not more than a total of five per cent. of the assessed valuation, by a two-thirds vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation: *Provided further,* That this limitation shall not apply to taxes levied in the year 1932."

On the question of increasing the tax limitation, all registered school electors were permitted to vote under 2 Comp. Laws 1929, § 7410 (Stat. Ann. § 15.428) which provides:

"In all school elections every citizen of the United States of the age of twenty-one years, male or female, who owns property which is assessed for school taxes in the district, or who is the parent or legal guardian of any child of school age included in the school census of said district, and who has resided in said district three months next preceding said election, shall be a qualified voter. On the question of voting school

taxes, every citizen of the United States of the age of twenty-one years, male or female, who owns property which is assessed for school taxes in the district, and who has resided in the district as above stated, shall be a qualified voter: Provided, That the purchaser of land upon a land contract, who actually pays the taxes upon such land and resides thereon, may vote upon all questions; and where a husband and wife own property jointly and the same is assessed for school taxes in the school district, each may, if otherwise qualified, vote upon all questions including the question of raising money.''

On the proposition to issue the bonds, only electors who owned property assessed for school taxes in the district were permitted to vote, in accordance with the provisions of 2 Comp. Laws 1929, § 7410. Both propositions carried in the election by the requisite majority, but thereafter defendant, president of the board of education of the district, refused to execute the bonds, giving as his reasons therefor, the following:

1.   All electors who could have qualified under Const. 1908, art. 3, § 1, as amended in 1932, should have been permitted to vote on the tax limitation proposition.

2.   That if the right to vote upon the said tax limitation was controlled by statutory rather than constitutional provisions, the voting thereon should have been restricted to electors qualified to vote on taxes, under 2 Comp. Laws 1929, § 7410.

3.   That the right to vote upon tax limitation should have been restricted to those electors qualified to vote on questions involving the direct expenditure of public money as provided by Const. 1908, art. 3, § 4, as amended in 1932, which provides:

''Whenever any question is submitted to a vote of the electors which involves the direct expenditure of

public money or the issue of bonds, only such persons having the qualifications of electors who have property assessed for taxes in any part of the district or territory to be affected by the result of such election or the lawful husbands or wives of such persons shall be entitled to vote thereon.''

4. That electors who could have qualified under the provisions of Const. 1908, art. 3, §§ 1, 4, as amended in 1932, should have been permitted to vote upon the bonding proposition.

5. That husbands or wives not qualified to vote school taxes under 2 Comp. Laws 1929, § 7410, but qualified under Const. 1908, art. 3, § 4, as amended in 1932, should have been permitted to vote on the bonding proposition.

On defendant's refusal to certify the bonds, plaintiff board of education filed a petition for a writ of mandamus to require such certification and issuance of the bonds. Defendant's answer consists of the same grounds as stated in his refusal to comply with the request of the board.

Const. 1908, art. 3, § 1, as amended in 1932, provides for the qualifications of electors generally under the Constitution as follows:

''In all elections every inhabitant of this State being a citizen of the United States; * * * shall be an elector and entitled to vote; but no one shall be an elector and entitled to vote at any election, unless he or she shall be above the age of twenty-one years and has resided in this State six months, and in the city or township in which he or she offers to vote twenty days next preceding such election: * * * And *provided further,* That there shall be no denial of the elective franchise at any election on account of sex.''

Qualifications of voters in school district elections are not required to be the same as those of electors under the Constitution. School districts are re-

garded as municipal corporations, and qualifications for school district electors, as fixed by the legislature, differ from the qualifications for general electors as set forth in the Constitution. *Belles* v. *Burr,* 76 Mich. 1; *Menton* v. *Cook,* 147 Mich. 540.

Const. 1908, art. 10, § 21, as added in 1932, provides that the 15-mill limitation may be increased "by a two-thirds vote of the electors of any assessing district." When this section was adopted as a constitutional amendment in 1932, the electors of the assessing district in question were school electors, as defined in 2 Comp. Laws 1929, § 7410. For many years prior to the adoption of Const. 1908, art. 10, § 21, in 1932, the qualifications of school electors as provided in statute had been different from those of constitutional electors as defined in Const. 1908, art. 3, § 1 as amended in 1932. It could not be said that the adoption of Const. 1908, art. 10, § 21, in 1932, either changed the legislative definition of a school elector, or enlarged the restrictions, limiting such electors to those who were either taxpayers of the district or parents or guardians of children of school age. The use of the term "electors of any assessing district" in Const. 1908, art. 10, § 21, as added in 1932, is persuasive that, with regard to a school district, it refers to school electors as defined by the legislature. Such electors were therefore duly qualified to vote upon an increase of a tax limitation in such school district; and all others not having such qualifications, such as those who were only possessed of the qualifications of electors under the general provisions of Const. 1908, art. 3, § 1, as amended in 1932, were excluded from voting upon such proposition.

Const. 1908, art. 3, § 4, as amended in 1932, involves only the qualifications of electors to vote on ques-

tions on the direct expenditure of public money or the issuance of bonds. It does not apply to the proposition of merely increasing the tax limitation, and therefore does not govern the qualification of electors voting on such a proposition. Const. 1908, art. 10, § 21, as added in 1932, provides that the tax limitation of 15 mills may be increased by a two-thirds vote of the electors of any assessing district. In this provision there is no other pertinent restriction upon the qualification of electors voting upon tax limitation and no such restriction is to be found elsewhere in the Constitution. There is therefore no inhibition in Const. 1908, art. 3, § 4, as amended in 1932, preventing the school electors of the district in question from voting upon the proposition to increase the tax limitation.

With regard to the electors voting upon the issuance of bonds, both Const. 1908, art. 3, § 4, as amended in 1932, and 2 Comp. Laws 1929, § 7410, require somewhat similar qualifications of property ownership. These provisions, however, are slightly different. The Constitution provides that such electors be property owners. It further provides that the husbands and wives of such owners shall likewise be entitled to vote on these propositions. The statute defining school electors provides that those entitled to vote upon all questions, including the question of raising money, shall be citizens residing in the school district, owning property assessed for school taxes therein. In the case of property jointly owned by husband and wife which is so assessed, both may vote on such questions, provided they are otherwise qualified. In addition, a purchaser of property on land contract, who actually pays the taxes on such land and resides thereon, may vote upon all such questions.

With these differences in mind as to the qualifications of property-owning electors to vote on issuance of bonds, we may proceed to a determination of whether the electors in the instant case were qualified. If voting on school bonds is limited to electors owning property assessed for taxes, as defined in the Constitution, the school electors in the instant case were not qualified to vote. If school electors having property assessed in their names for school taxation were entitled to vote on the bond issue in question, the election was valid.

We are constrained to hold that the electors owning property assessed for taxation entitled to vote upon both issues, as defined in Const. 1908, art. 3, § 4, as amended in 1932, refers to the class of electors defined in section 1 of the same article of the Constitution; that the term "in all elections" as used in Const. 1908, art. 3, § 1, as amended in 1932, refers to elections provided for by virtue of the Constitution, and is inapplicable to school district elections. Such elections are not the "elections" referred to in, and within the purview and contemplation of, the Constitution. *Menton* v. *Cook, supra.*

We are, therefore, of the opinion that 2 Comp. Laws 1929, § 7410, governs the qualifications of electors voting on tax limitation and bond issues in school districts; and from the foregoing it is our determination that the school electors voting on the proposition of an increase of the tax limitation in the instant case were properly qualified; and that the school electors having the necessary qualifications of property ownership, under the statute, who voted upon the proposition of the issuance of bonds, were likewise qualified so to do.

The writ of mandamus should be granted. No costs allowed as a public question is involved.